Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>THOMAS SCIALPI,<br><br>*Defendant*. | Crim. No. 23-00029<br><br>**OPINION & ORDER** |

**VAZQUEZ, DISTRICT JUDGE**

Pending before the Court is Defendant Thomas Scialpi's motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). D.E. 4 ("Br."). The government filed opposition, D.E. 6 ("Opp."), to which Defendant replied, D.E. 8 ("Reply"). The Court reviewed the parties' submissions and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the following reasons, the Court denies the motion without prejudice. The Court also notifies the Government that it intends, *sua sponte*, to terminate Defendant's supervision early.

**I.   Background**

In 2007, Scialpi applied to a bank for a loan to buy a yacht. However, he used false documents to do so. He received the loan and then defaulted. In October 2015, Defendant was charged in the United States District Court for the Eastern District of New York in a five-count indictment for activity related to the fraudulent loan, among other things. On October 8, 2019, Defendant pled guilty to count three, which charged a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344. Defendant pled guilty pursuant to a written plea agreement, which provided

in relevant part as follows: "The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 21 months or below." D.E. 6-1 ¶ 4. The agreement further indicated that Defendant faced a five-year statutory maximum term of supervised release. *Id.* ¶ 1c.

Scialpi was then sentenced on July 22, 2021 to time served with four years of supervised release, including six months of home detention. Among other things, Defendant was also ordered to pay the bank $206,146.27 in restitution and complete 300 hours of community service. On January 12, 2023, Defendant's supervision was transferred to this District.

Defendant filed the current motion after serving nearly 2 years of his supervised release. Defendant provides that the following reasons support his request: (1) he has fully satisfied his restitution obligation, (2) he has completed his 300 hours of community service with Habitat for Humanity and continues to volunteer there, (3) his age (59) and lack of any other criminal history, and (4) his family and contributions to the community. Br. at 1-6. In opposition, the Government asserts that Defendant's appellate waiver precludes him from seeking early termination and that Defendant has not otherwise shown that he is entitled to early termination. Opp. at 3-7. In reply and along with a certification of counsel, defense counsel indicates that she was Defendant's trial counsel and that she did not understand Defendant to be waiving his right to seek early termination. Reply at 4. As a result, counsel continues, Defendant could not have been aware that he was waiving his right either. *Id.* Counsel further represents that the United States Probation Office does not oppose Scialpi's motion and that he currently is on low intensity supervision. *Id.* at 2.

II. **Legal Standard**

18 U.S.C. § 3583(e)(1) provides that, "after considering the factors set forth in section

3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," the Court may

> terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;

18 U.S.C. § 3583(e)(1). *See United States v. Davies*, 746 F. App'x 86, 88 (3d Cir. 2018) (citing 18 U.S.C. § 3553(a)(1), (2)(B)-(D), (4)-(7)); *accord United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020). After considering those § 3553(a) factors, a district court may, in its discretion, terminate a period of supervised released if it is satisfied that such action "is warranted by the defendant's conduct and is in the interest of justice." *Melvin*, 978 F.3d at 52. The court need not make specific findings of fact with respect to each factor – a statement that the court has considered the factors is sufficient. *Id.* (citing *United States v. Gammarano*, 321 F.3d 311, 315-16 (2d Cir. 2003)).

In *Melvin*, the Third Circuit clarified that a district court is not required to find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release. *Id.* But, the Third Circuit made clear, that does not mean such circumstances are irrelevant to granting or denying a motion for early termination of supervised release. *Id*. The court in *Melvin* explained "[t]hat is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release." *Id*. The Third Circuit continued that "[w]e think that '[g]*enerally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Id.* (emphasis in original) (quoting *Davies*, 746 F. App'x at 89); *see also United States v. Szymanski*, No. 12-0247, 2020 WL 6515958, at *2 (W.D. Pa. Nov. 5, 2020)

3

("The court explained in *Melvin* that, although not required, some changed circumstances will generally be important to warrant early termination of supervised release [.]").

### III. Discussion

The Government first asserts that Defendant's plea agreement waiver prohibits his current motion in light of the Third Circuit's decision in *United States v. Damon*, 933 F.3d 269 (3d Cir. 2019). In *Damon*, the defendant agreed to the following waiver in his plea agreement:

> Ronald Damon knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33.

*Id.* at 271.

The district court sentenced Damon within the parameters of the waiver, including a 5-year period of supervised release. *Id.* Damon then sought an early termination of his supervised release after approximately 32 months. *Id.* The Third Circuit analyzed Damon's plea agreement pursuant to contract law. *Id.* at 272 (citation omitted). The Circuit continued that a criminal "sentence" in the waiver "is commonly understood to encompass[] all penalties imposed on a defendant, which can include penalties beyond imprisonment." *Id.* at 273 (citation omitted). The Court in *Damon* added that reading sentence to include supervised release was consistent with the Circuit's prior decisions. *Id.* (citing *United States v. Goodson*, 544 F.3d 529, 535 (3d Cir. 2008)). As a result, the *Damon* court concluded, the defendant's waiver barred challenges to his supervised release. *Id.* at 274-25.

Scialpi responds that his plea agreement is materially different than the one in *Damon*, relying on three cases in support: *United States v. DeSanto*, No. 20-cr-206, 2022 WL 686380

4

(D.N.J. Mar. 7, 2022); *United States v. Mabry*, 528 F. Supp. 3d 349 (D.N.J. 2021); and *United States v. Crews*, No. 10-663-5, 2020 WL 6581430 (E.D. Pa. Nov. 10, 2020). Reply at 3. In *Mabry* and *Crews*, the courts both distinguished *Damon* for the same reason. In each case, the plea agreement waiver applied to appeals and collateral attacks, and both courts found that a motion for early termination of supervised release did not fall into either category. *Mabry*, 528 F. Supp. 3d at 353-56; *Crews*, 2020 WL 6581430, at *2.[1] In *DeSanto*, the waiver prohibited an appeal or collateral attack of a sentence but also later expressly indicated that the defendant agreed "not to appeal any term of supervised release that is less than or equal to the statutory maximum[.]" *DeSanto*, 2022 WL 686380, at *3 (emphasis omitted). The court in *DeSanto* then reasoned as follows:

> Initially, the post-sentencing waiver appears to bar any appeal or collateral challenge of DeSanto's entire sentence including his term of imprisonment and term of supervised release. However, the underlined sentence at the bottom of the post-sentencing waiver specifies that DeSanto may not appeal a term of supervised release, but it does not address a collateral challenge. In reading the full text of the post-sentencing waiver, one could be confused as to its scope. Certainly, anyone in DeSanto's shoes would be confused. Generally, "[w]here the petitioner only waives the right to appeal, he is not precluded from filing a petition for collateral review." *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (internal quotation marks omitted). DeSanto's plea agreement was drafted by the Government. Therefore, the Court must construe any ambiguity in the language against the Government. [*United States v.*] *Gebbie*, 294 F.3d [540,] 551-52 [(3d Cir. 2002)]. As such, DeSanto may move to terminate his supervised release under his plea agreement. If the Government intended to bar DeSanto's right to seek early termination of his supervised release by a collateral challenge, the language within the plea agreement should have been more precise and was confusing. *See* [*United States v.*] *James*, 928 F.3d [247,] 252 [(3d Cir. 2019)].

---

[1] In a nonprecedential opinion, the Third Circuit appears to have taken a different view. *See United States v. Oyerinde*, 784 F. App'x. 111, 113-14 (3d Cir. Aug. 19, 2019). The *Mabry* court distinguished *Oyerinde* because that matter was on appeal. *Mabry*, 528 F. Supp. 3d at 354 n.1.

*Id.* (footnote omitted).

      The Court finds the three cases cited by Defendant to be distinguishable. Unlike *DeSanto*, Scialpi's plea agreement does not contain apparently contradictory language as to whether the waiver vis-à-vis supervised release applies only to an appeal. And unlike *Mabry* and *Crews*, Scialpi's waiver is not limited to appeals and collateral attacks.[2] As noted, in Defendant's waiver, he agreed "not to file an appeal *or otherwise challenge*, by petition pursuant to 28 U.S.C. § 2255 *or any other provision*, the conviction *or sentence* in the event that Court imposes a term of imprisonment of 21 months or below." D.E. 6-1 ¶ 4 (emphases added).

      Defendant, however, indicates that his waiver was not knowing and voluntary. And a waiver is only enforceable if three elements are met:

> "(1) that the issues the [the defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice."

*Damon*, 933 F.3d at 272 (alteration added) (quoting *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008)). In *Damon*, the defendant did not argue that his plea was not knowing and voluntary. Here, defense counsel represents that she was not aware of the potential scope of Defendant's waiver, which is strong evidence that Defendant was not either (as defense counsel also argues). However, the Court would require more information before making a definitive ruling on the issue. For example, the Court has not been provided the plea colloquy, the sentencing submissions, or

---

[2] The Court is not making a definitive finding on this issue because the waiver also contains at least two express references to appeal and collateral attack. D.E. 6-1 ¶ 4 (indicating that Defendant "further waives the right to raise on appeal or on collateral review any argument" as to the statute or his conduct as well as "[n]othing in the foregoing waiver of appellate and collateral review rights shall preclude" Defendant from raising an ineffective claim). This arguably ambiguous language also could be relevant to a *DeSanto* analysis. Defendant did not make an argument as to this language, but it could be relevant to whether Defendant knowingly and voluntarily waived his rights.

the final presentence report. *See Mabry*, 528 F. Supp. 3d at 356 ("[I]n addition to the text of the plea agreement, there is nothing in the colloquy or the Government's sentencing memorandum which indicates that Mabry was put on notice that he was surrendering his right to file a motion under 18 U.S.C. § 3583(e).  There are also no reports that Mabry's lawyer advised him of such consequences[.]").  Thus, additional information—as well as a potential hearing—is necessary for the Court to adjudicate the knowing and voluntary issue.

However, in lieu of additional action, the Court *sua sponte* finds that it would grant Defendant's motion. The Court would do so for two reasons.  First, Defendant has already repaid the full amount of his sizable restitution.  The Government argues that "Scialpi's payment of a mandatory restitution amount to the victim—a victim which suffered a loss as a result of Scialpi's fraudulent conduct—is what is expected of him."  Opp. at 6.  The Court agrees with the Government, as a matter of law.  But in the Court's experience, it is very rare for a defendant to do so as a matter of practice.  And in this case, not only was the restitution over $200,000, Scialpi fully paid it within two years of starting supervised release.  Economic crimes are unique in that the loss amount is precisely quantifiable so that it can be precisely replaced.  Moreover, in the Court's experiences, victims of economic crimes are primarily interested in recovering their losses.

Second, Defendant has continued to work for Habitat of Humanity even though his community service is complete.  The Executive Director for the Bergen County Habitat for Humanity indicates that even though Scialpi finished his community service, he continues to volunteer and donate his time.  D.E. 8-1 at 1.  The Executive Director sets forth the manner in which Scialpi has continued to contribute, observing that "[h]e has gone above and beyond in his dedication to Habitat Bergen.  We truly feel like God has sent us a gift."  *Id.*

Thus, the Court would grant early termination in light of Defendant's full restitution

payment and his continued community service. The Third Circuit has stated that "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011)). Moreover, Congress intended supervised release to assist offenders as they transition back into their communities. *Id.* (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)). Consequently, "supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.*

However, given the current procedural posture of the case, the Court does not believe that it can terminate Defendant's supervised release at this time. Section 3583(e)(1) provides that a Court can terminate supervised release, after a year has been served, in the interest of justice and "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation[.]" 18 U.S.C. § 3583(e)(1). Federal Rule of Criminal Procedure 32.1 provides the following as to a modification of probation or supervised release:

> (c) MODIFICATION.
>
> (1) In General. Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.
> (2) Exceptions. *A hearing is not required if*:
> (A) the person waives the hearing; or
> (B) *the relief sought is favorable to the person and does not extend the term of probation or of supervised release;* and
> (C) *an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so.*

Fed. R. Crim. P. 32(c) (emphases added). Here, the Government has objected to the relief sought. As a result, a hearing is required should the Government so choose.

## IV. Conclusion

For the foregoing reasons, and for good cause shown,

IT is on this 14th day of June 2023 hereby

**ORDERED** that Defendant's motion for early termination of his supervised release, D.E. 4, is DENIED without prejudice; and it is further

**ORDERED** that the Government shall submit in writing on the record within fourteen (14) days of the date of this Opinion and Order whether it wishes to have a hearing or otherwise be heard on the Court's intent to terminate Defendant's supervised release. If the Government does not submit any information on the docket within fourteen days, the Court will terminate Defendant's supervised release.

_____
John Michael Vazquez, U.S.D.J.